**Clifford G. CRANE and Bonnie Crane, Plaintiffs and Appellants,**

v.

**TIMBERBROOK VILLAGE, LTD., Heart Marketing and Development, Inc., as general partner of Timberbrook Village, Ltd.; Leisure Sports, Inc., and Dixie Title Company, Defendants and Respondents.**

No. 890041–CA.

Court of Appeals of Utah.

May 17, 1989.

Willard R. Bishop, Cedar City, for plaintiffs and appellants.

Michael D. Hughes, St. George, for defendants and respondents.

Before CONDER [1], GARFF and GREENWOOD, JJ.

OPINION

DEAN E. CONDER, Judge:

Plaintiffs Clifford and Bonnie Crane appeal from the district court's dismissal of their claims to enforce an alleged contract. We affirm.

Clifford Crane was a limited partner in Timberbrook Village, of which Heart Marketing and Development, Inc. and Leisure Sports, Inc. were general partners. Barry Church and Russell Gallian were principals in Leisure Sports, Inc.

1. Dean E. Conder, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(1)(j) (1987).

Crane and the general partners reached a tentative "agreement in principle"[2] as of November 13, 1985 that Crane's partnership interest would be purchased in return for $175,000 cash, a condominium unit, and release of the Cranes as guarantors of a partnership obligation owed to Nebraska Savings and Loan Association. The agreement in principle was to be reduced to writing, signed, and closed through an escrow with Dixie Title Company. Gallian, a lawyer, accordingly prepared documents evidencing and implementing the preliminary agreement, which Gallian and Church then signed on behalf of Leisure Sports and mailed to the Cranes, who reside in California. A letter from Gallian to the Cranes accompanying the documents included the following:

> Enclosed you will find documents which you should execute and send to the closing agent in connection with your sale of your Limited Partnership interest in Timberbrook Village Ltd. The closing agent is Dixie Title Co. Inc., 205 East Tabernacle, St. George, Utah, 84770 (a self addressed envelope is enclosed for your convenience).

Leisure Sports and Heart Marketing thereupon placed $175,000 in escrow at Dixie Title Company. Nebraska Savings and Loan Association signed a document agreeing to substitute Gallian in place of the Cranes on the partnership's loan of over $2 million. The Cranes' attorney thereafter conferred with the general partners, suggesting an increase in the cash to be paid to the Cranes and seeking assurance that the Cranes would indeed be released from the Nebraska Savings loan. The general partners declined to increase the cash amount and sent the Cranes' attorney a photocopy of the document substituting Gallian as guarantor. A second letter from Gallian to Cranes stated:

> It is our understanding that Mr. and Mrs. Crane will execute the documents conveying their interest to Leisure Sports (20%) and redeeming 5% from Timberbrook. Upon receipt the Escrow Agent

will disburse $175,000 to your clients and Barry Church will execute a warranty deed on behalf of the Partnership for the condo.

Shortly thereafter, the Cranes signed the documents which Gallian had sent them and mailed them to the designated escrow agent by first class mail postmarked February 21, 1985, with a letter containing some instructions to the escrow agent.

On February 22, 1985, the day after the Cranes had mailed the signed documents but before the escrow agent received them in the mail, Gallian telephoned Mr. Crane and told him that "the deal was off."

Following a trial to the bench, the court concluded that Gallian's correspondence to the Cranes had the effect of extending to them an offer which remained open for their acceptance until revoked on February 22, 1985. The court also found that acceptance of the offer was intended to be effective on receipt, and that the Cranes' acceptance was received after the offer had been revoked. The trial court also held that the Cranes' additional instructions to the escrow agent imposed terms which converted the would-be acceptance into a counteroffer. The Cranes appeal, contending that their acceptance was timely and that the escrow instructions contained in the letter of their counsel to the escrow agent merely implemented the contract rather than returning a counteroffer. We agree with the trial court that the Cranes' acceptance was not effectuated before the offer was validly revoked. Since that issue is dispositive, we do not reach the question whether the escrow instructions invalidated the acceptance.

▮ In making an offer, the offeror may specify the manner in which the offer must be accepted. If the offer is not accepted in the specified manner, mutual assent is lacking and no contract is formed. *J.R. Stone Co. v. Keate,* 576 P.2d 1285, 1288 (Utah 1978); *Frandsen v. Gerstner,* 26 Utah 2d 180, 487 P.2d 697, 700 (1971); *cf. Nielson v. Droubay,* 652 P.2d 1293, 1297 (Utah 1982). If the offeror does not prescribe the man-

---

2. The trial court concluded that no enforceable contract resulted from this tentative understanding, and that conclusion is not challenged on appeal.

ner of acceptance, rules developed at common law determine whether the acceptance was validly effected. In this case, were it governed by those common law rules, the Cranes' acceptance would be deemed effective on dispatch, Restatement (Second) of Contracts § 63; 1 A. Corbin, Corbin on Contracts, § 78, and would thus have created a valid contract. However, this common law rule does not apply, because the offeror in this case required otherwise of the acceptance.

The trial court found that the documents which Gallian sent to Crane were required to be executed and delivered to the escrow agent for the acceptance to be effective. The Cranes do not argue that the finding in this regard is clearly erroneous, and it is not without substantial support in the record. Utah R.Civ.P. 52(a). Therefore, we conclude that the acts required of the Cranes for acceptance of the offer, including delivery of the documents to the escrow agent, were not fully performed before the general partners revoked the offer on February 22, 1985.

The validity of the revocation has not been questioned other than through the argument that it came too late, after the Cranes' acceptance. Since we conclude that their acceptance was without effect, the revocation appears to have validly terminated the offer without formation of a contract. The dismissal of the Cranes' suit is therefore affirmed.

GARFF and GREENWOOD, JJ., concur.