**ESTATE LANDSCAPE AND SNOW REMOVAL SPECIALISTS, INC.,**
**Plaintiff and Respondent,**

v.

**MOUNTAIN STATES TELEPHONE AND TELEGRAPH CO., Defendant and Petitioner.**

**No. 900312.**

Supreme Court of Utah.

Dec. 17, 1992.

Floyd A. Jensen, Salt Lake City, for Mountain States.

Lowell V. Summerhays, Murray, for Estate Landscape.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

ZIMMERMAN, Justice:

This case is before us on writ of certiorari to the Utah Court of Appeals. Estate Landscape and Snow Removal Specialists, Inc. ("Estate Landscape"), sued Mountain States Telephone and Telegraph Company ("Mountain Bell"), claiming that Mountain Bell owed it $21,549.50 for removing snow from Mountain Bell's premises. The trial court granted judgment for Estate Landscape, and Mountain Bell appealed. The court of appeals affirmed the judgment, except for the portion of the judgment that provided for compound instead of simple interest. *Estate Landscape & Snow Re-*

*moval Specialists, Inc. v. Mountain States Tel. & Tel. Co.*, 793 P.2d 415 (Utah Ct.App.1990). We granted certiorari and now reverse.

■ Before we recite the history of this case, we discuss the appropriate light in which we will view the facts before us. The court of appeals held that where, as here, the trial court denies the movant's motion for summary judgment and thereby eliminates one of the movant's claims or defenses, the reviewing court should view the facts in the light most favorable to the movant. We disagree. As the movant before the trial court, Mountain Bell had the burden of showing that it was entitled to summary judgment on the basis of accord and satisfaction. *See, e.g., Security State Bank v. Broadhead*, 734 P.2d 469, 472 (Utah 1987); *Petersen v. Petersen*, 709 P.2d 372, 375 (Utah 1985); *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1082 (Utah 1985); *United Am. Life Ins. Co. v. Zions First Nat'l Bank*, 641 P.2d 158, 160 (Utah 1982); *Messick v. PHD Trucking Serv., Inc.*, 615 P.2d 1276, 1277 (Utah 1980). As the petitioner before this court, Mountain Bell has the burden of demonstrating that the trial court misconstrued the law in denying its motion for summary judgment and that it was entitled to summary judgment as a matter of law. Because Mountain Bell retains the burden of demonstrating the errors of the trial court and the court of appeals, we must view the facts in this case in the light most favorable to Mountain Bell's opponent, Estate Landscape. We state the following facts accordingly.[1]

In November of 1984, Estate Landscape entered into a written contract with Mountain Bell to remove snow from Mountain Bell's premises, including its office in Alta, Utah. The contract required Estate Landscape's services at the Alta office whenever accumulated snow was at least four inches deep. Estate Landscape removed snow at the Alta office from December of 1984 to April of 1985, billing Mountain Bell twice for its services. The first bill was for snow removal services performed before December 27th. Mountain Bell paid that bill without dispute. At the end of snow season, Estate Landscape sent Mountain Bell its second bill. That bill was for $30,162.50, itemizing the services rendered from the end of December of 1984 to April of 1985. Because Mountain Bell believed that Estate Landscape had charged it for services on days when snowfall at the Alta office was less than four inches, it prepared a check to Estate Landscape for only $8,613.

On or about June 21st, due to an oversight by its accounting department, Mountain Bell sent Estate Landscape the $8,613 check without an explanation of the lower figure or a warning that negotiating the check would result in an accord and satisfaction. Upon discovering its error, Mountain Bell sent Estate Landscape an explanatory letter on or about June 28th. The letter listed the dates Mountain Bell believed Estate Landscape had erroneously charged it for snow removal and then concluded:

> Based on the above identified billing descrepancies [sic] we have enclosed a check for $8613.00 which is payment in full for satisfaction of contracted services. *If you are not willing to accept that sum,*

---

**1.** The court of appeals' confusion may have resulted from an apparent inconsistency in our prior case law. In reviewing appeals from grants of summary judgment, we have stated both that we view the facts in the light most favorable to the "losing party," a standard that would require us to indulge all inferences and presumptions in favor of Mountain Bell, and that we view the facts in the light most favorable to the "nonmoving party," a standard that would require us to give the benefit of the doubt to Estate Landscape. *Compare Malone v. Parker*, 826 P.2d 132, 133 (Utah 1992) *with Hill v. Seattle First Nat'l Bank*, 827 P.2d 241, 242 (Utah 1992). In practice, these formulations often will lead to the same conclusion. However, as here, occasionally they do not. We take this opportunity to make clear that a reviewing court should recite the facts in the light most favorable to the *nonmoving* party. Because we indulge all inferences and presumptions in favor of allowing the dispute to proceed to trial and consequently view the facts in the light most likely to create factual questions, we necessarily construe the facts against the party who bears the burden of proving that summary judgment was appropriate.

*$8613.00 in full satisfaction of the sums due, DO NOT negotiate the check, for upon your negotiation of that check, we will treat the matter as fully. paid.*

(Emphasis in original.) Although the letter took more than a month to reach Estate Landscape, a delay Mountain Bell attributes to the fact that it sent the letter by certified mail, Estate Landscape had not yet negotiated Mountain Bell's $8,613 check. Estate Landscape's answers to re-quests for admissions suggest that it knew the letter referred to the $8,613 check.

On August 8, 1985, Estate Landscape filed suit to recover the entire $30,162.50. It negotiated the $8,613 check on October 28, 1985, and later amended its complaint to recover the $21,549.50 difference. Mountain Bell moved for summary judgment, arguing that Estate Landscape's negotiation of the check constituted an accord and satisfaction. Third District Court Judge Michael Murphy denied the motion. The order denying the motion stated that given the "undisputed facts" of the case, Mountain Bell could not show an accord and satisfaction because the dispute involved severable claims, thereby precluding application of the accord and satisfaction doctrine.

After the denial of summary judgment, the case went to trial before Judge Timothy Hanson. Judge Hanson entered a $10,-990 judgment for Estate Landscape, ruling that Judge Murphy's denial of summary judgment precluded Mountain Bell's defense of accord and satisfaction. Judge Hanson noted that "there was no accord and satisfaction in that the Order of Judge Michael R. Murphy delineated the area fully and is the law of the case."[2] Before the Utah Court of Appeals, Mountain Bell argued, first, that the trial court erred in treating the denial of its motion for summary judgment as dispositive of its accord and satisfaction defense; and second, that Estate Landscape's negotiation of the $8,613 check discharged Mountain Bell's obligation to pay the remaining $21,549.50 of Estate Landscape's bill. Although the

opinion is ambiguous, Estate Landscape apparently responded that its contract with Mountain Bell was severable and that therefore Mountain Bell's payment did not discharge its entire obligation. *See*. 793 P.2d at 419 n. 10.

The court of appeals rejected Mountain Bell's claims, reasoning that because Judge Murphy had denied Mountain Bell's summary judgment motion on the merits, that denial "effectively disposed of Mountain Bell's accord and satisfaction defense." *Id.* at 418. Reviewing the legal correctness of the denial of summary judgment, the court held that Mountain Bell had failed to prove mutual assent for the alleged accord and satisfaction because it had produced no evidence that Estate Landscape subjectively intended to accept the $8,316 as satisfaction of its claims. Consequently, the court of appeals affirmed the judgment in favor of Estate Landscape. *See id.* at 419–20. The court noted that the contract may have been severable, but it declined to address the issue of severability because its finding of lack of mutual assent disposed of Mountain Bell's claim of accord and satisfaction. *Id.* at 419 n. 10. We granted certiorari and now reverse.

■ Before our court, Mountain Bell attacks the reasoning of both the court of appeals and the district court, arguing, inter alia, that the trial court misconstrued the law of accord and satisfaction in denying its motion for summary judgment. Mountain Bell contends that its $8,613 payment completely discharged its obligation to Estate Landscape because it fulfilled all the elements of an accord and satisfaction. Those elements are (i) a bona fide dispute over an unliquidated amount; (ii) a payment tendered in full settlement of the entire dispute; and (iii) an acceptance of the payment. *See Marton Remodeling v. Jensen,* 706 P.2d 607, 609 (Utah 1985); *Masonry Equip. & Supply v. Willco Assoc., Inc.,* 755 P.2d 756, 758 (Utah Ct.App.1988).

---

**2.** Before our court, Mountain Bell argues that Judge Hanson erred in holding that Judge Murphy's denial of summary judgment became the law of the case. Because our treatment of Mountain Bell's defense of accord and satisfaction is dispositive, we do not address this issue.

Although Mountain Bell discusses all three elements of accord and satisfaction in its brief, the trial court and the court of appeals focused on issues pertinent to the latter two elements, holding, respectively, that Mountain Bell did not tender the $8,613 payment in full settlement of the entire dispute and that Estate Landscape never accepted the payment because it did not subjectively assent to the accord. Nevertheless, because a statement in the court of appeals' opinion indicates some confusion as to the proper criteria for determining the existence of a dispute, we will discuss all three elements of accord and satisfaction.

■ Before we address these elements, however, we note the applicable standard of review. Judge Hanson based his finding that there was no accord and satisfaction on Judge Murphy's denial of summary judgment on "undisputed facts." Because he was dealing with undisputed facts, Judge Murphy's denial of summary judgment amounted to a ruling of law, which we review for correctness, without any deference to the trial court. *See, e.g., Landes v. Capital City Bank,* 795 P.2d 1127, 1129 (Utah 1990); *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988).

■ We now turn to the merits of this case. We begin with the question of what constitutes a bona fide dispute over an unliquidated amount. As a preliminary matter, we note that even if a claim is undisputed and liquidated, parties can still discharge their obligations through accord and satisfaction. In such instances, however, parties must support the accord with separate consideration. *Sugarhouse Fin. Co. v. Anderson,* 610 P.2d 1369, 1372 (Utah 1980). In cases like the one before us, where there is no separate consideration, the parties' surrender of their legal right to dispute the amount at issue supplies the consideration necessary to support the accord. *Id.* Without relinquishment of rights to press a bona fide dispute over an unliquidated amount, this accord must fail for lack of consideration.

The question of whether there was a bona fide dispute over an unliquidated amount breaks into two elements: First, is there a bona fide dispute, and second, is the amount unliquidated? We begin with the bona fide dispute requirement. Estate Landscape claims that there was no bona fide dispute because Mountain Bell's $8,613 check did not bear a restrictive condition on its face and almost two months elapsed before Estate Landscape received the letter warning that negotiation of the check would constitute full satisfaction of Mountain Bell's outstanding balance. Estate Landscape's logic is somewhat obscure, but it apparently contends that because Mountain Bell did not identify the existence of the dispute until after it tendered its check, it should not be allowed to claim that the amount was subject to a bona fide dispute. The court of appeals may have accepted this argument, as its opinion underscores the fact that the restrictive language did not appear on the check itself. 793 P.2d at 419 & n. 13.

■ We have canvassed the law of this and other jurisdictions and have discovered no authority to the effect that a restriction on negotiation must appear on the face of the instrument to establish a bona fide dispute. Nor has Estate Landscape supplied us with any such authority. To the contrary, it is well established that general principles of contract law govern accord and satisfaction, *e.g., Petersen,* 709 P.2d at 374–75; *Golden Key Realty, Inc. v. Mantas,* 699 P.2d 730, 732 (Utah 1985), and that under those principles, a written offer may be contained in one or more documents, *see Sacramento Baseball Club, Inc. v. Great N. Baseball Co.,* 748 P.2d 1058, 1060 (Utah 1987); 1 Arthur Linton Corbin, *Corbin on Contracts* § 31 (1952) [hereinafter *Corbin on Contracts* ], such as a check and a separate letter.

■ The correct standard for determining whether there is a bona fide dispute is as follows: There must be a good-faith disagreement over the amount due under the contract. The disagreement need not be well-founded, so long as it is in good faith. *Golden Key Realty,* 699 P.2d at 733; *Ashton v. Skeen,* 85 Utah 489, 496, 39 P.2d 1073, 1076 (Utah 1935). Nor must the exis-

tence of this dispute be apparent from the face of the check, provided that the totality of the circumstances makes clear that such a dispute exists over an unliquidated amount and that the creditor understood that the debtor was tendering the payment in satisfaction of the entire dispute. *See, e.g., Pitts v. National Indep. Fisheries Co.,* 71 Colo. 316, 206 P. 571, 571 (1922); *Los Atrevidos v. Preferred Risk Life Ins. Co.,* 107 N.M. 217, 755 P.2d 61, 63 (1988); *First Nat'l Bank & Trust Co. v. Fireproof Warehouse & Storage,* 8 Ohio App.3d 253, 456 N.E.2d 1336, 1339 (1983); *Van Riper v. Baker,* 61 Or.App. 540, 658 P.2d 537, 539, *rev. denied,* 295 Or. 122, 666 P.2d 1344 (1983); *cf. Cqover v. G & J Elec., Inc.,* 285 Or. 247, 590 P.2d 720, 722 (1979). Applying these principles to the facts before us, we find that taken together, the letter and the check unmistakably establish a dispute over the amount due and an offer to settle the dispute for the sum of $8,613. Moreover, the undisputed facts of this case support a finding that Estate Landscape knew of the dispute. Estate Landscape received Mountain Bell's letter well before it negotiated the $8,613 check. It admitted that it knew that the letter referred to the check. And it initiated litigation to recover the outstanding balance before it negotiated the check. In light of these facts, we reject Estate Landscape's argument that there was no bona fide dispute because the restriction on negotiation did not appear on the face of the check.

We next determine whether the amount in dispute was unliquidated. Estate Landscape argues that the trial court's finding that the total bill was $30,162.50, of which only $8,613 had been paid, compels a conclusion that the amount in dispute was liquidated. We disagree. The mere fact that the trial court eventually identified the sum it believed to be in controversy does not mean that the damages were liquidated at the time Mountain Bell tendered the $8,613 payment. As we stated in 1989, "It is, of course, axiomatic that all claims can be reduced eventually to monetary value. All claims would therefore at some point become liquidated...." *Canyon Country Store v. Bracey,* 781 P.2d 414, 422 (Utah

1989). The relevant inquiry is not whether the claim was liquidated at the time of trial, but whether it was liquidated at the time Mountain Bell tendered its $8,613 payment.

The undisputed facts before us indicate that Mountain Bell's claim was unliquidated at the time of tender because the amount due depended on, as Mountain Bell expressed it, "that most variable of factors, the weather, as well as on the amount of time spent and the number of removals performed by Estate." We find that the claim was unliquidated at the time Mountain Bell tendered its payment to Estate Landscape. Mountain Bell therefore has established the first element of accord and satisfaction, which requires a bona fide dispute over an unliquidated amount.

We next turn to the second element of accord and satisfaction, which requires that the party tendered payment in settlement of the full amount of the disputed sum. Before our court, Mountain Bell contends that it met this requirement. The court of appeals did not discuss this issue because it disposed of the case on the issue of subjective intent to accept the proffered accord. However, the issue of settlement in full formed the basis for the trial court's denial of Mountain Bell's motion for summary judgment. The trial court held that because Mountain Bell had accepted some of Estate Landscape's claims for payment for snow removal and rejected others, the $8,613 check represented a payment for a liquidated, undisputed obligation and therefore did not discharge the disputed amounts due under the contract. Estate Landscape presses much the same argument before our court, contending that its contract with Mountain Bell gave rise to multiple, severable obligations because each day of work under the contract constituted a separate claim. Consequently, Estate Landscape argues, Mountain Bell's payment of $8,613 discharged only the claims for days on which both parties conceded payment was due and did not settle its obligations for snow removal on days when Mountain Bell disputed weather conditions.

■ An accord and satisfaction may discharge either an entire contract or only a portion of that contract. *Quealy v. Anderson,* 714 P.2d 667, 668 (Utah 1986). It will discharge only a portion of a contract if the contract gives rise to severable obligations or liabilities, unless the parties make clear that they intend the accord to have a wider reach. *Id.* at 668–69.

The policy behind this rule is clear. An accord intended to satisfy one distinct obligation should not bar every claim one party has against another. If it did, the risk of forfeiting valid claims would deter parties to contracts from attempting to resolve identifiable disputes. This would undermine the policy behind the doctrine of accord and satisfaction, which is to encourage the economical and efficient out-of-court settlement of disputes. With this policy in mind, we turn to the question of whether Mountain Bell's contract with Estate Landscape was divisible.

■ Whether a contract is divisible depends on the intent of the parties at the time they entered the contract. *E.g., Management Servs. Corp. v. Development Assocs.,* 617 P.2d 406, 408 (Utah 1980); *Brown v. Board of Educ. of the Morgan County Sch. Dist.,* 560 P.2d 1129, 1131 (Utah 1977); *Thomas J. Peck & Sons, Inc. v. Lee Rock Prods., Inc.,* 30 Utah 2d 187, 191, 515 P.2d 446, 448 (1973); *Continental Bank & Trust Co. v. Bybee,* 6 Utah 2d 98, 101, 306 P.2d 773, 775 (1957); *Sprouse v. Jager,* 806 P.2d 219, 222 (Utah Ct.App. 1991); *Parents Against Drunk Drivers v. Graystone Pines Homeowners' Ass'n,* 789 P.2d 52, 56 (Utah Ct.App.1980). *See generally* 17A Am.Jur.2d *Contracts* § 415 (1991). Determining this intent poses a question of law. *E.g., Brown,* 560 P.2d at 1130–31; *see also Emphraim Theatre Co. v. Hawk,* 7 Utah 2d 163, 167, 321 P.2d 221, 223 (1958).

■ A court divining the intent of parties to a contract should look first within the four corners of the instrument itself. *E.g., Management Servs.,* 617 P.2d at 408; *Thomas J. Peck & Sons,* 30 Utah 2d at 191, 515 P.2d at 448; *Continental Bank & Trust Co.,* 6 Utah 2d at 101, 306 P.2d at 775; *Sprouse,* 806 P.2d at 222; *Graystone Pines,* 789 P.2d at 56. Here, Estate Landscape does not claim that the written contract expressly states the parties' intent that their contract be divisible. Instead, it argues that the nature and subject matter of the contract imply an intent to sever.

Both the text and the subject matter of the contract contradict this contention. Estate Landscape contracted that from December 1, 1984, to November 31, 1985, it would

> provide all labor, materials & incidentals necessary to: Maintain a snow-free condition on all parking lots including loading dock areas and stairwells as applicable.... The snow shall be plowed at Alta Main ... when the snow reaches 4 inches. The cost is to be $85.00 per removal or $55.00 for the front end loader and operator as required.

This language embodies a year-long commitment to remove snow from Mountain Bell's Alta office. By its terms, the contract contemplates snow removal for an entire year, not just a single occasion. Unlike situations in which parties contracted for multiple services,[3] the parties here negotiated for the long-term provision of *one* service: removal of snowfall of at least four inches. Consequently, the nature and purposes of the contract contradict Estate Landscape's argument that the agreement is divisible.

Estate Landscape argues and Judge Murphy held that this contract is analogous

---

3. *See, e.g., Board of Comm'rs of Kingfisher County v. Vahlberg,* 198 Okl. 527, 180 P.2d 144, 148–49 (1947) (holding that contract providing separate compensation for architect's preliminary studies, drawing of plans, and supervision of construction was severable); *Sagebrush Dev., Inc. v. Moehrke,* 604 P.2d 198, 202 (Wyo.1979) ("[T]his contract was a divisible or severable contract in that it contemplated performance and payment for separate groups of activities, i.e., street maintenance, sewer service and water service...."); *cf. Brown,* 560 P.2d at 1132 (holding that while contract requiring separate coaching and teaching duties would be severable, contract at issue was not severable because school clearly had bargained for teacher who could also coach).

to those in the cases of *Bennett v. Robinson's Medical Mart, Inc.*, 18 Utah 2d 186, 417 P.2d 761 (1966), and *Dillman v. Massey Ferguson, Inc.*, 13 Utah 2d 142, 369 P.2d 296 (1962), in which we found that the contracts at issue were divisible and therefore not fully discharged by accord and satisfaction. However, *Bennett* and *Dillman* are inapposite. In *Dillman*, we held that where a manufacturer accepted some of the merchandise a dealer had returned to it and rejected other merchandise that had been sent back to the dealer, the dealer's negotiation of a check marked "the amount due in full to complete recent buyback on your account" was not clear enough to create an accord and satisfaction on the claim for rejected merchandise. 13 Utah 2d at 143–44, 369 P.2d at 298. In *Dillman*, the notation on the check was reasonably construed to cover the merchandise that the manufacturer actually accepted, not the merchandise rejected and sent back to the dealer. In the instant case, the letter unambiguously conveyed Mountain Bell's intent that the check apply to the entire amount owed under the contract. In *Bennett*, the court held that where a sales representative's contract with a distributor provided for commissions up to a certain date and a fixed monthly salary thereafter, negotiation of a check representing the representative's fixed salary did not discharge the claim for his commissions, even though the check was marked "payment in full." 18 Utah 2d at 190, 417 P.2d at 764. Here, there was neither an obvious division of compensation between salary and commissions nor a fixed amount of compensation.

Instead of being governed by *Dillman* and *Bennett*, this case is factually indistinguishable from *Marton Remodeling v. Jensen*, 706 P.2d 607 (Utah 1985), in which a homeowner disputed the charge for remodeling done under a time and materials contract because he felt that the remodeling company's final tally of hours was excessive. We made no attempt to sever the remodeling contract into separate jobs or numbers of hours performed on separate days. As with the agreement here, the *Marton* contract was for the long-term provision of *one* service. *See id.* at 609; *see also Bench v. Bechtel Civil & Minerals, Inc.*, 758 P.2d 460 (Utah Ct.App. 1988); *Cove View Excavating & Constr. Co. v. Flynn*, 758 P.2d 474 (Utah Ct.App. 1988); *Air Van Lines, Inc. v. Buster*, 673 P.2d 774, 776–78 (Alaska 1983); *Flagel v. Southwest Clinical Physiatrists, P.C.*, 157 Ariz. 196, 197, 202, 755 P.2d 1184, 1185, 1190 (Ct.App.1988). As *Marton* suggested, unless we have explicit direction from the text of the contract itself, we will not presume a contract for one service to be severable. Under the contract before us, therefore, Estate Landscape had one claim against Mountain Bell, and one claim only.[4] Because the contract was indivisible, we find that Mountain Bell tendered payment in full settlement of its obligation. Mountain Bell has established the second element of its defense of accord and satisfaction.

The third and final element of accord and satisfaction is the creditor's acceptance of the payment. In this case, the issue is whether the creditor must subjectively as-

---

**4.** Estate Landscape's confusion over severability may stem from its conflation of this concept with the requirement that the obligation discharged by an accord and satisfaction be a matter in dispute. It is not alone in this confusion. In denying Mountain Bell's motion for summary judgment on the issue of accord and satisfaction, the trial court evidently held that because Estate Landscape was unquestionably entitled to the $8,613 check, its negotiation of the check did not discharge its disputed claims.

We take this opportunity to dispel any misapprehension that a payment on a disputed obligation discharges only the nondisputed elements of the obligation. As we said in *Marton*, "[A]n accord and satisfaction of a single claim is not avoided merely because the amount paid and accepted is only that which the debtor concedes to be due or that his [or her] view of the controversy is adopted in making the settlement." 706 P.2d at 609 (citing *Air Van Lines, Inc.*, 673 P.2d 774); *accord Flagel*, 755 P.2d at 1188, 1190; *Kilander v. Blickle Co.*, 280 Or. 425, 571 P.2d 503, 505 (1977); *Van Riper*, 658 P.2d at 539. *See generally* 6 *Corbin on Contracts* § 1290, at 168–70. A contrary holding would discourage debtors from proffering compensation for nondisputed elements of their contractual agreements, thereby eliminating accord and satisfaction as an efficient and cost-effective means of resolving commercial disputes.

sent to the accord or whether the creditor's mere negotiation of a check bearing a restrictive condition suffices to discharge the obligation. In determining that Mountain Bell's letter to Estate Landscape did not constitute an accord and satisfaction, the court of appeals held:

[T]his letter is entirely unilateral; there is no indication that Estate Landscape assented to the letter as an accord. Its signature on the check is not an assent to an accord not found on the face of the check as a restrictive endorsement, where the party to whom the accord is offered has expressly rejected the proposed accord, continued the dispute, and filed litigation to resolve it adversarially in court.

793 P.2d at 419 (footnote omitted). In essence, therefore, the court of appeals reasoned that because Estate Landscape contested the accord through litigation, it must have "rejected" the accord proffered by Mountain Bell. We disagree.

As Judge Jackson pointed out in dissent, the majority of the court of appeals misconstrued the doctrine of accord and satisfaction. As adopted in this jurisdiction, the doctrine does not require subjective intent to discharge an obligation, provided the parties' actions give rise to a reasonable inference that they accepted the altered performance of their contract. Where, as here, the check is tendered under the condition that negotiation will constitute full settlement, mere negotiation of the check constitutes the accord, regardless of the payee's efforts or intent to negate the condition.

Both Utah cases and authority from other jurisdictions support this holding. In *Marton*, for example, we found that a creditor's negotiation of a check bearing a restrictive condition constituted an accord and satisfaction even though the creditor had written "not full payment" beneath the condition before cashing the check. 706 P.2d at 608. Similarly, the Utah Court of Appeals found that crossing out the restrictive condition before negotiating the check did not avoid an accord and satisfaction.

*Cove View Excavating & Constr.*, 758 P.2d at 478.

In both cases, the creditors' conduct reveals a subjective intent not to accept the lower payment as full discharge of their claims. However, because they negotiated the checks, their subjective objections were irrelevant. Their options were to accept the checks on their debtors' terms or to refrain from negotiating the checks and seek the entire sums through the judicial process. *See, e.g., Marton*, 706 P.2d at 610; *Cove View Excavating & Constr.*, 758 P.2d at 478; *see also Danac, Inc. v. Gudenau & Co.*, 751 P.2d 947, 950 (Alaska 1988); *Air Van Lines, Inc.*, 673 P.2d at 778; *Graffam v. Geronda*, 304 A.2d 76, 80 (Me. 1973). *See generally* 6 *Corbin on Contracts* § 1279; Restatement (Second) of Contracts § 281 cmt. d (1981).

Applying this standard to the facts before us, we find that Estate Landscape's negotiation of the $8,613 check satisfied Mountain Bell's obligation, regardless of Estate Landscape's subjective intent to recover the full amount through litigation. While it is true that, as with any contract, the parties must consent to an accord and satisfaction, *e.g., Petersen*, 709 P.2d at 374–75, a party's conduct may be conclusive proof of acceptance, *e.g., Spor v. Crested Butte Silver Mining, Inc.*, 740 P.2d 1304, 1308 (Utah 1987). Here, Estate Landscape's negotiation of the check constituted acceptance of the accord and satisfaction as a matter of law. As the New York Court of Appeals explained sixty years ago, "What is said is overridden by what is done, and assent is imputed as an inference of law." *Hudson v. Yonkers Fruit Co.*, 258 N.Y. 168, 179 N.E. 373, 374 (1932). Consequently, Mountain Bell has established the third and final element of accord and satisfaction.

Because, on the undisputed facts before us, Mountain Bell has established all three elements of the defense of accord and satisfaction, we hold that the court of appeals erred in upholding the summary judgment against Mountain Bell on this issue. We reverse the opinion of the court of appeals and the trial court's summary judgment

and remand to the trial court for entry of judgment in favor of Mountain Bell.

HALL, C.J., and HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., dissents.