*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 43**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MAGLEBY CATAXINOS & GREENWOOD, PC; JAMES E. MAGLEBY;
MAGLEBY & GREENWOOD, PC; and PEGGY A. TOMSIC,
*Respondents*,

*v.*

ERIC K. SCHNIBBE,
*Petitioner*.

No. 20230524
Heard April 10, 2024
Filed December 12, 2024

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Randall N. Skanchy
No. 200902977

Attorneys:

Bryon J. Benevento, Adam C. Buck, Salt Lake City,
for respondents Magleby Cataxinos & Greenwood, PC;
Magleby & Greenwood, PC; and Peggy A. Tomsic

James E. Magleby, pro se respondent

Jefferson W. Gross, S. Ian Hiatt, J. Adam Sorenson, Salt Lake City,
for petitioner

JUSTICE PETERSEN authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE HAGEN,
JUSTICE POHLMAN, and JUDGE RUSSELL joined.

Having recused himself, CHIEF JUSTICE DURRANT does not
participate herein; DISTRICT COURT JUDGE RONALD G. RUSSELL sat.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Erik Schnibbe worked as an attorney at the law firm of Magleby, Cataxinos, and Greenwood for several years. After one of the firm's clients prevailed at trial and won a large damages award, the firm paid Schnibbe $1 million for his share of the contingency fee by a direct deposit into his bank account. Schnibbe believed that he had been promised a greater share of the firm's fee. However, he kept the $1 million. Years later, after he no longer worked for the firm, Schnibbe sued for the additional money he claimed he should have received.

¶2 The Defendants—the firm and two of its attorneys, James Magleby and Peggy Tomsic—moved for summary judgment, arguing that Schnibbe had accepted the direct deposit payment as full settlement of his share of the contingency fee. In their view, Schnibbe's claims were therefore barred by the doctrine of accord and satisfaction. The district court agreed and granted summary judgment to the Defendants.

¶3 The court of appeals affirmed that decision, concluding that all three elements of accord and satisfaction were met: "(1) an unliquidated claim or a bona fide dispute over the amount due; (2) a payment offered as full settlement of the entire dispute; and (3) an acceptance of the payment as full settlement of the dispute." *Magleby Cataxinos & Greenwood PC v. Schnibbe*, 2023 UT App 54, ¶ 19, 530 P.3d 969 (cleaned up); *see id.* ¶ 23. The bulk of the court's analysis, however, went to the acceptance element. Drawing from some of our prior cases, the court concluded that "a creditor who retains money—whether transmitted by direct deposit or by check—that the debtor intends as payment in full of a disputed amount will be deemed to have accepted that payment as an accord and satisfaction, regardless of the creditor's potential subjective intent to the contrary." *Id.* ¶ 43; *see also id.* ¶¶ 32–45. And because Schnibbe "kept the money for four years before filing suit, . . . made no effort to return the funds," and "registered no protest . . . about the payment for some two years after receiving it," the court affirmed the district court's determination that Schnibbe had accepted the $1 million as full settlement of his disputed fee. *Id.* ¶ 45.

¶4 On certiorari, Schnibbe takes issue only with the court of appeals' conclusion on the third element—that he accepted the payment as full satisfaction of the disputed debt. He argues that

acceptance occurs only when the recipient of a proposed accord manifests assent by an affirmative act, like negotiating a check. And Schnibbe asserts that no affirmative act occurred here, because he merely received the payment passively by direct deposit into his bank account. As for the court of appeals' reasoning, Schnibbe argues that it enables a debtor to impose an accord and satisfaction unilaterally, "so long as [the debtor] has the creditor's direct deposit information . . . or other means of electronically transferring funds" to them.

¶5   We agree with the court of appeals that when a debtor pays a creditor through a direct deposit, the creditor's retention of the funds can indicate acceptance as a legal matter, just like a creditor's negotiation of a check. But bearing in mind that acceptance is a fact question that is dependent on the totality of the circumstances, we express the legal principle this way: where the other elements of accord and satisfaction are present and the debtor pays the creditor by direct deposit, the creditor is deemed to have accepted the payment as full satisfaction of the debt if the creditor's conduct, under the circumstances, shows that the creditor intended to keep the money, knowing that the debtor tendered it as full satisfaction of the disputed debt. This is so even if the creditor takes issue with the amount of the payment made.

¶6   Here, the undisputed facts demonstrate that Schnibbe chose to keep the $1 million deposit, knowing the Defendants intended it as full payment of his share of the contingency fee. Accordingly, the third element of accord and satisfaction is satisfied as a matter of law: Schnibbe accepted the payment as full settlement of the disputed debt. We affirm.

## BACKGROUND[1]

¶7  Schnibbe joined the firm in 2010 on Tomsic's recommendation. Together, Schnibbe, Tomsic, and Magleby litigated a contingency matter on behalf of one of the firm's clients. We heard appeals related to that case twice—once on interlocutory appeal and again after trial. *See USA Power, LLC v. PacifiCorp*, 2010 UT 31, 235 P.3d 749; *USA Power, LLC v. PacifiCorp*, 2016 UT 20, 372 P.3d 629.

---

[1]   "When reviewing a motion for summary judgment, we recite the facts in the light most favorable to the non-moving party." *Burton v. Chen*, 2023 UT 14, ¶ 5 n.2, 532 P.3d 1005 (cleaned up).

¶8 Soon after the interlocutory appeal, Tomsic and Magleby discussed how the contingency fee would be split in the event that their client recovered, including what percentage would go to Schnibbe. Magleby sent Tomsic an email in March 2011 suggesting they discuss whether "10% [was] the right number" for Schnibbe. And although the details are disputed, Schnibbe testified that they agreed to pay him 10% of the firm's fee, which could be capped at $1 million—unless the client's recovery was "larger-than-expected," in which case no cap would apply.

¶9 Years later, after this court affirmed the jury verdict in the firm's client's favor, the firm received an approximately $55 million contingency fee. At that point, Magleby sent a firm-wide email indicating that payments would be issued to all employees who had worked at the firm during the litigation. Magleby later emailed a release agreement to some of the firm's attorneys, including Schnibbe, directing them to "please sign and return after you get the dough." Schnibbe did not sign the release. But the following month, June 2016, Schnibbe received $1 million (minus withholdings) from the firm via two direct deposit payments into his bank account.

¶10 "[S]hortly after [he] learned what the payment was," Schnibbe had a conversation with the firm's human resources partner, Christine Greenwood, who had stopped by his office "to say hi." Regarding the $1 million payment, Schnibbe "asked her what the heck happened," given that "the deal [was] that [he] was going to get [ten] percent" of the firm's contingency fee if the client's recovery was large. He believed that given the size of the judgment, there would be no cap to his share of the fee, and he couldn't "understand why . . . [Magleby and Tomsic] would . . . not recognize the agreement." Schnibbe "expressed that [he] was unhappy" and that it "was a difficult situation." As Schnibbe recalls, Greenwood "expressed empathy" but "didn't know what was going on" and made no indication that she would discuss the matter with any of the firm's partners.

¶11 Schnibbe did not complain to Magleby or Tomsic because they were celebrating in Mexico at the time, and Schnibbe thought the matter deserved a "face-to-face" discussion. However, even after Magleby and Tomsic returned, Schnibbe never voiced dissatisfaction with the payment to either of them until years later. Schnibbe understood that the firm did not intend to pay him anything else for his work on the contingency case. But he was "hopeful that [Magleby and Tomsic] would make things right,"

and he was "[r]eluctant to sue his friends and law partners." So Schnibbe kept the $1 million, believing that "he had time to seek recovery of the rest of his compensation later."

¶12   Schnibbe first brought the issue to Magleby's attention in March 2018. During a disagreement about Schnibbe's work performance, Schnibbe remarked: "You asked for the 'old Eric' back. You killed him when you and Peggy reneged on the USA Power deal." Two years after that, Magleby told Schnibbe that his salary would be reduced because he fell short of his billable requirements. Magleby also noted that they had previously "discussed [Schnibbe] taking a reduced salary," based on an "email report" from July 2018. Schnibbe responded, "I don't think it's really fair for you to conflate the aftermath of the USA Power deal not being honored . . . with what happened later, in the last half of 2018 to present. I thought we had turned a corner on the USA Power thing and were moving on, but perhaps I was wrong."

¶13   Magleby terminated Schnibbe the following day. Schnibbe then sued the firm, Magleby, and Tomsic, seeking an additional $4.5 million he claimed the firm should have paid him from the contingency fee.

¶14   The Defendants moved for summary judgment, arguing, among other things, that Schnibbe's claims were barred by the doctrine of accord and satisfaction. In their view, the amount of Schnibbe's share of the fee was disputed, and Schnibbe had accepted the $1 million as payment in full. As they saw it, Schnibbe was therefore precluded from suing over the disputed debt. The district court agreed with the Defendants, and it granted summary judgment in their favor on all of Schnibbe's claims.

¶15   The court of appeals affirmed, concluding as a matter of law that Schnibbe's retention of the $1 million payment effectuated an accord and satisfaction.

¶16 Schnibbe petitioned for certiorari review, which we granted. We have jurisdiction under Utah Code subsection 78A-3-102(3)(a).

## ISSUE AND STANDARD OF REVIEW

¶17 Schnibbe argues that the court of appeals erred in affirming the district court's summary judgment order. "On certiorari, this court reviews the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *Donovan v. Sutton*, 2021 UT 58, ¶ 15, 498 P.3d 382 (cleaned up).

## ANALYSIS

¶18 On certiorari, Schnibbe challenges the court of appeals' conclusion as to the third element of accord and satisfaction—that he accepted the $1 million payment as full settlement of his disputed share of the contingency fee.[2] Schnibbe asserts that acceptance of a proposed accord necessarily requires an affirmative act. And he argues that the court of appeals departed from that principle when it agreed with the district court that he had accepted the proposed accord, as a matter of law, by passively retaining the payment for several years. Schnibbe also argues that disputes of fact preclude summary judgment in this case, and that he did not accept the payment as a final settlement of his share of the fee because he refused to sign the release that Magleby sent to him.

¶19 We agree with the court of appeals that the undisputed facts in the record demonstrate that Schnibbe accepted the Defendants' proposed accord as a matter of law—not because of his passive receipt of the deposit, but because, thereafter, Schnibbe did not attempt to return the money and knowingly kept it for years. We also reject the two alternative arguments advanced by Schnibbe.

¶20 An accord and satisfaction exists when the parties to a contract "agree that a different performance, to be made in substitution of the performance originally agreed upon, will discharge the obligation created under the original agreement." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 23, 215 P.3d 933 (cleaned up). "When a claim is discharged through an accord and satisfaction, the claim is considered fully satisfied," and "[t]he claimant no longer has the legal right to seek recovery."[3] *Id.*

---

[2] We therefore assume for purposes of this appeal that the other two elements—"an unliquidated claim or bona fide dispute over the amount due" and "a payment offered as full settlement of the entire dispute"—are met. *See ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 20, 998 P.2d 254. We offer no opinion on those elements.

[3] "An accord and satisfaction may discharge an obligation arising out of a contract, quasi-contract, or tort." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 23, 215 P.3d 933 (cleaned up). Schnibbe alleged claims for breach of contract, breach of fiduciary duty, promissory estoppel, unjust enrichment, and constructive trust. At least some of his claims were against Magleby and Tomsic only.

(continued . . .)

¶21  We have applied this doctrine most often in the context of monetary debts. *See, e.g.*, *ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶¶ 17–26, 998 P.2d 254; *Est. Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co.*, 844 P.2d 322, 325–31 (Utah 1992); *Marton Remodeling v. Jensen*, 706 P.2d 607, 608–10 (Utah 1985). In these cases, the debtor proposes "a payment offered as full settlement" of a disputed debt. *ProMax Dev. Corp.*, 2000 UT 4, ¶ 20. And by accepting the payment on such terms, the creditor relinquishes any claim to the difference between what it alleges the debtor owes and the amount that the debtor paid. *See id.* ¶¶ 21–22; *Est. Landscape*, 844 P.2d at 330; *Marton Remodeling*, 706 P.2d at 608–10.

¶22  To establish an accord and satisfaction, the debtor "must show (1) an unliquidated claim or a bona fide dispute over the amount due;[4] (2) a payment offered as full settlement of the entire dispute; and (3) an acceptance of the payment as full settlement of the dispute." *ProMax Dev. Corp.*, 2000 UT 4, ¶ 20. We have explained with respect to the first two elements that "the totality of the circumstances" must make clear that a good faith "dispute exists over an unliquidated amount and that the creditor understood that the debtor was tendering the payment in satisfaction of the entire dispute." *Est. Landscape*, 844 P.2d at 327.

¶23  The court of appeals concluded that the first two elements were "quite clearly satisfied" in this case. *Magleby Cataxinos & Greenwood PC v. Schnibbe*, 2023 UT App 54, ¶ 21, 530 P.3d 969. It reasoned, based on the undisputed facts, that "[a]t the time the payment was made, both sides understood that there was some uncertainty regarding the exact amount [of the contingency fee

---

The district court dismissed all of Schnibbe's claims on summary judgment. And the court of appeals affirmed that order. Because Schnibbe does not argue otherwise, we assume that if Schnibbe accepted the $1 million payment as full satisfaction of his share of the contingency fee, then the accord and satisfaction precludes all of Schnibbe's claims.

4    With respect to this first element, we have noted that, "even if a claim is undisputed and liquidated, parties can still discharge their obligations through accord and satisfaction. In such instances, however, parties must support the accord with separate consideration." *Est. Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co.*, 844 P.2d 322, 326 (Utah 1992).

that] Schnibbe was to receive." *Id.* And the Defendants "quite clearly" "intended the $1 million payment to be a complete satisfaction of any obligation owed to Schnibbe related to the [contingency fee]." *Id.* ¶ 22.

¶24 But the third element, acceptance, "present[ed] a much closer question" for the court of appeals. *Id.* ¶ 23. It began by surveying several of this court's accord and satisfaction cases— each of which presented a situation where the debtor paid the creditor by check, and the debtor argued that once the creditor negotiated the check the creditor was later precluded from deeming it a partial payment and suing for the rest. *See id.* ¶¶ 24– 31. Based on our holdings in these cases, the court of appeals explained that it is "clearly established . . . that a creditor who cashes or negotiates a check intended as payment in full of a disputed amount is deemed—as a matter of law—to have taken action clear enough to indicate acceptance of an accord, even if the creditor contemporaneously makes clear its subjective intent *not* to accept the accord." *Id.* ¶ 31.

¶25 The court then examined whether "the situation presented here—in which the funds were transmitted to Schnibbe via direct deposit rather than by check—[was] materially different." *Id.* ¶ 23; *see id.* ¶¶ 32–45. The court observed that "[w]ith a regular check, creditors are required to take an affirmative act—endorsing and negotiating the check—in order to take the money from the debtor's account and move it to their own." *Id.* ¶ 34. "But with direct deposit, creditors need not take any action in order to move the money into their account; instead, the money simply appears there passively, without requiring the creditor to do anything." *Id.*

¶26 The court then focused on "what the creditor does with the money after receiving it: returning it to the debtor, setting it aside, or keeping and using it." *Id.* ¶ 35. In the court's view, returning or setting aside money received could "signal that the creditor does not accept [it] as an accord." *Id.* Keeping it, on the other hand, "may fairly be viewed as an indication that the creditor intends to accept the accord." *Id.*

¶27 The court concluded that "creditors who receive money by direct deposit that is intended as payment in full of a disputed amount, and who keep the money in their account—instead of either returning the money within a reasonable time or, at a minimum, separating it or setting it aside and registering protest—

will be deemed to have accepted the money as an accord and satisfaction." *Id.*

¶28 On this basis, the court of appeals held that Schnibbe had accepted the Defendants' proposed accord as a matter of law. *See id.* ¶ 45. The court "ha[d] no trouble concluding that Schnibbe failed to return the deposited funds within a reasonable time." *Id.* Schnibbe "kept the [$1 million] for four years before filing suit, and . . . made no effort to return the funds even after filing suit." *Id.* "In addition, although Schnibbe did not sign the [r]elease, he remained employed at the [f]irm for another four years . . . ." *Id.* And although he had discussed the matter with Greenwood soon after receiving the payment, Schnibbe "registered no protest to either Magleby or Tomsic about the payment for some two years after receiving it." *Id.*; *see id.* ¶ 11 n.4.

¶29 Schnibbe's primary argument on certiorari is that acceptance of an accord and satisfaction requires an affirmative act by the creditor, similar to negotiating a check. Otherwise, Schnibbe says, a debtor could discharge a disputed debt by simply transferring any given amount of money to the creditor. He argues that the court of appeals therefore erred in concluding that he had accepted the Defendants' proposed accord by passively retaining the direct deposit funds. But we agree with the court of appeals' determination that the undisputed facts in the record show that Schnibbe accepted the proposed accord as a matter of law.

¶30 As with any contract, whether an accord and satisfaction has taken place "is ultimately a conclusion of law." *See Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 17, 989 P.2d 1077. But that conclusion "depends on the resolution of subsidiary issues of fact," *id.* including whether the creditor in fact accepted the proposed accord, *cf. Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378 (Utah 1995) ("A trial court's finding about whether a party accepted an offer . . . is a finding of fact."). The acceptance element of the accord and satisfaction framework asks whether the recipient of the proposed accord has in fact "agree[d] that a different performance . . . will discharge the [original] obligation." *Bodell Constr. Co.*, 2009 UT 52, ¶ 23 (cleaned up); *see also Bradshaw v. Burningham*, 671 P.2d 196, 198 (Utah 1983) ("The agreement does not discharge the existing claim; it is discharged by the substituted performance."). Accordingly, while the court of appeals' reasoning seemed to focus on the method of payment and what the recipient subsequently did with the money, *see Magleby*, 2023 UT App 54, ¶¶ 34–45, we clarify that the analysis should include any fact that

informs whether the creditor in fact chose to keep the money rather than returning it to the debtor, knowing the debtor intended the deposit as payment in full.[5]

¶31 On summary judgment, the court must view the facts surrounding whether the creditor accepted the payment "in the light most favorable to the nonmoving party." *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (cleaned up). Where the undisputed facts leave no room, however, for a "reasonable difference of opinion" on acceptance, then "the decision [becomes] one of law for the trial judge or for an appellate court" to make. *Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 20, 390 P.3d 314 (cleaned up).

¶32 It is well established that "a party's conduct may be conclusive proof of acceptance." *Est. Landscape*, 844 P.2d at 330. So, while assent can be given expressly, it "may also be inferred from the conduct of the parties." *Spor v. Crested Butte Silver Mining, Inc.*, 740 P.2d 1304, 1308 (Utah 1987).

¶33 Schnibbe argues that for acceptance of an accord to be inferred from the conduct of the creditor, the conduct must be affirmative rather than passive. And it is correct that, where the first two elements of an accord and satisfaction are present, we have concluded that a creditor's affirmative act of negotiating a

---

[5]   In one sentence of its opinion in this case, the court of appeals stated that "a creditor who retains money—whether transmitted by direct deposit or by check—that the debtor intends as payment in full of a disputed amount will be deemed to have accepted that payment as an accord and satisfaction, regardless of the creditor's potential subjective intent to the contrary." *Magleby Cataxinos & Greenwood PC v. Schnibbe*, 2023 UT App 54, ¶ 43, 530 P.3d 969. While this statement, read in isolation, may appear to create an absolute rule that kicks in as soon as the creditor "retains money," we read the court's analysis, on the whole, to recognize that acceptance is a question of fact to be determined based on the totality of the circumstances. *See, e.g., id.* ¶ 44 (explaining that "creditors who elect not to return, within a reasonable time, money received by direct deposit run a high risk . . . of being deemed to have accepted the accord"). For the sake of clarity, we reiterate that the acceptance analysis must consider all relevant facts—not just whether the creditor "retain[ed] money" for a specific period of time. *See id.* ¶ 43.

check constitutes acceptance of the proposed accord. *See, e.g., Est. Landscape*, 844 P.2d at 330; *Marton Remodeling*, 706 P.2d at 608.

¶34 But we have not established a categorical rule that only affirmative actions will suffice to show acceptance. As Schnibbe acknowledges, we have said that acceptance "*typically* requires an affirmative act." *Anderson v. Fautin*, 2016 UT 22, ¶ 18, 379 P.3d 1186 (emphasis added). But under the right circumstances, a party's inaction can give rise to an inference of acceptance. *See* 17A AM. JUR. 2D *Contracts* § 97 (2024) ("[S]ilence and inaction operate as an acceptance if, under the circumstances, an inference of assent is indicated or necessary."). Relevant factors may include when the creditor became aware of the deposit, whether and when the creditor attempted to return the money, the length of time the creditor retained the money, what the creditor did with the money, and any other fact that informs whether the creditor intended to keep the money or return it. The question here is whether, under the circumstances, Schnibbe's conduct shows that he intended to keep the money, knowing it was intended as full compensation for his portion of the contingency fee.

¶35 We agree with the court of appeals' conclusion that, in the context of the undisputed facts here, there could be no "reasonable difference of opinion" as to whether Schnibbe's knowing retention of funds for four years amounted to acceptance of the Defendants' proposed accord as a matter of law. *See Heslop*, 2017 UT 5, ¶ 20 (cleaned up). Schnibbe's passive receipt of the direct deposit into his account did not, by itself, indicate acceptance. But that is not all that happened here. Schnibbe concedes that he was aware that the $1 million had been deposited into his account. And he knew it was all the Defendants intended to pay him in connection with the contingency matter. And although he was dissatisfied with the amount of the payment, he kept the money for four years, making no attempt to return it.

¶36 Schnibbe "could not disregard . . . the condition placed on the [payment]" by the Defendants. *See Marton Remodeling*, 706 P.2d at 609. He knew that the Defendants intended the $1 million as payment in full of his share of the contingency fee. Presuming that the other elements of an accord and satisfaction were present (they are not disputed by Schnibbe on certiorari), "[t]he law gave [Schnibbe] the choice of accepting the [payment] on [the Defendants'] terms or of returning it." *See id.* at 610 (cleaned up). And we conclude as a matter of law that by knowingly retaining the payment in his account for years—certainly, long enough to

demonstrate that he intended to keep it—Schnibbe chose option one. Thus, we reject Schnibbe's argument that he had to take some additional, affirmative step with the payment to constitute acceptance.

¶37 We now address two additional arguments raised by Schnibbe.

¶38 First, he points to two facts in the record that he argues create a factual dispute regarding whether he accepted the proposed accord, and therefore preclude summary judgment. Schnibbe contends that he objected to the payment by not signing the release agreement that Magleby emailed him. And he observes that he complained to Greenwood that $1 million fell short of "the deal," and he did not understand why Magleby and Tomsic had not held up their end of the agreement. Notably, while Schnibbe clearly conveyed to Greenwood that he was "unhappy" about the situation, he did not demand any additional payment or otherwise indicate that he would not accept the $1 million as full satisfaction of his share. But even if he had more clearly communicated a rejection of the payment, it would not create a genuine dispute of fact with respect to acceptance in the face of Schnibbe's retention of the money.

¶39 In the context of accord and satisfaction, "[w]hat is said is overridden by what is done, and assent is imputed as an inference of law." *Est. Landscape*, 844 P.2d at 330 (cleaned up). Thus, even though Schnibbe complained to Greenwood and refused to sign the release, the fact remains that he kept the money for several years and never attempted to return it—knowing that the payment was all the Defendants intended to give him for his share of the contingency fee. And we have made clear that a creditor's subjective rejection of a proposed settlement, on its own, "does not prevent his retention of the money from operating as an assent to the discharge." *Marton Remodeling*, 706 P.2d at 609 (cleaned up). Accordingly, Schnibbe's refusal to sign the release and his conversation with Greenwood do not create a genuine dispute as to whether he accepted the proposed accord.

¶40 Second, Schnibbe raises an issue based on his refusal to sign the release. He contends that he cannot have accepted the proposed accord because the Defendants expressly directed him to accept by signing the release, which he did not do. He cites the general principle of contract law that, "[i]n making an offer, the offeror may specify the manner in which the offer must be

accepted." *Crane v. Timberbrook Vill., Ltd.*, 774 P.2d 3, 4 (Utah Ct. App. 1989). And when "the offer is not accepted in the specified manner, mutual assent is lacking and no contract is formed." *Id.* Schnibbe therefore argues that because Magleby directed him to manifest assent by signing the release, a manifestation of assent in any other way is ineffective.

¶41 Although Schnibbe raised this issue in the district court, he did not do so in the court of appeals. And that prevents us from reaching it.

¶42 "We do not grant certiorari to review *de novo* the trial court's decision." *Butterfield v. Okubo*, 831 P.2d 97, 101 n.2 (Utah 1992). Rather, our review "is limited to examining the court of appeals' decision." *Canfield v. Layton City*, 2005 UT 60, ¶ 13 n.3, 122 P.3d 622 (cleaned up); *see also id.* (stating that our review "is further circumscribed by the issues raised in [the] petition[]" (cleaned up)). *But see Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶¶ 33–34, 374 P.3d 3 (explaining that we may address issues that the court of appeals declined to reach because it resolved the case on other grounds). Put another way, we view the case from the court of appeals' perspective and ask whether we would have reached the same result. *See Canfield*, 2005 UT 60, ¶ 10. And "[w]hen a party fails to raise and argue an issue on appeal, the issue has been waived before the appellate court." *State v. Johnson*, 2017 UT 76, ¶ 16 n.4, 416 P.3d 443. Thus, we will not reverse the court of appeals' decision based on an argument that was not presented to it.

## CONCLUSION

¶43 The court of appeals correctly determined that the undisputed facts showed Schnibbe accepted the Defendants' proposed accord as a matter of law. Accordingly, we affirm.

———————