BARNEY v. JEWEL TEA CO., Inc., et al.

No. 6504.   Decided July 14, 1943.   (139 P. 2d 878.)

See 39 C. J. Master and Servant, sec. 1506; 35 Am. Jur., 1005 et seq.

*Fabian, Clendenin, Moffat & Mabey,* of Salt Lake City, for appellants.

*John R. Hart* and *William Stanley Dunford,* both of Provo, for respondent.

WADE, Justice.

The Jewel Tea Company, Inc., is a corporation engaged in the business of selling merchandise. It conducts this business through agents who call at the homes of individuals for the purpose of selling its goods, which consist mostly of groceries. It has been the policy of this company as an inducement to its customers to purchase greater quantities of its products to offer premiums consisting principally of cooking utensils, sewing kits and other household items. These are sold to the customers for cash, or by a credit of approximately 20 per cent of the purchase price of the products sold, which credit is applied toward the payment of the premium.

George A. Davis was one of the agents of the Jewel Tea Co., Inc., from May, 1940, to September, 1941. His duties consisted of selling, delivering, and collecting for the company's merchandise and premiums. Among the territories which he served was Spanish Fork, Utah. Lucinda Barney, a resident of Spanish Fork, Utah, was one of the customers of the company whom he inherited from his predecessor. He also inherited the responsibility of collecting from her $4.45 which she owed for premiums. During the entire period of his dealings with her he sold her about $1.20 worth of groceries. These purchases were insufficient to

pay for what she owed for the premiums. Davis tried to persuade her to buy more groceries but did not succeed. About March 1, 1941, Mrs. Barney and Davis had a dispute about the debt which she owed to the company. The result of the dispute was that Davis was requested not to call at the Barney home in the future. Arrangements were made whereby Mrs. Barney was to leave 25c every two weeks at the home of her mother who was also a customer of the Jewel Tea Co. These sums were to be applied on the payment of Mrs. Barney's account until it was liquidated. After one or two payments she failed to make any more and about May 21, 1941, Mr. Davis called at Mrs. Barney's home for the purpose of making further collections. Mrs. Barney did not take kindly to his coming and as a result of the melee which followed a suit was brought by Lucinda Barney as plaintiff against the Jewel Tea Co., Inc., and George A. Davis, as defendants, for battery committed by George A. Davis. The jury found in favor of plaintiff and awarded both compensatory and punitive damages. From this judgment defendants appeal.

The question to be determined is whether a principal is liable for compensatory damages for a battery committed by its agent at a time and place in which he is acting for his principal.

The evidence is undisputed that when Mr. Davis approached Mrs. Barney on May 21, 1941, he had his account book and pencil in his hand, and he met her in her front yard near a gate where she was watering some flowers with a hose. Also present at that time were her next door neighbor and her children. Polite greetings were exchanged. The evidence is conflicting as to what happened after this. The facts most favorable to respondent are these: Mr. Davis asked Mrs. Barney if she was going to pay or trade out the account. She replied that he had failed to receipt her for the payments which she had previously made and until he did this she would make no further payments. Mrs. Barney then turned her back on Mr. Davis and walked

over to a rock garden. Mr. Davis followed her, hit her with his shoulder and precipitated her into the rock garden. She then turned the water hose on him. What followed was a general fracas in which epithets, fists, and a broom-stick played prominent parts. The broom-stick was wielded by Mrs. Barney with sufficient force and power to break in half in one of its encounters with Mr. Davis's back. At that auspicious moment a sister-in-law and neighbor of Mrs. Barney arrived and intervened. Mr. Davis then left the yard somewhat hurriedly. Having once left the premises he apparently changed his mind and started to come back. Mrs. Barney helped him to change his mind again by throwing a spike which pierced his trouserleg and wounded him. At this moment he saw the respondent's father and brother approaching and got into the Jewel Tea Company's truck and drove away, refusing to accept the invitation of her father and brother to come out and fight.

There was evidence that Mrs. Barney had been in poor health for a long time and that as a result of her illness she was more irritable and excitable than a person enjoying normally good health. At the time of the altercation her health had improved, but as a result of it she suffered a nervous relapse besides the physical injuries inflicted by appellant Davis.

From the above facts it is apparent Mr. Davis called on respondent for the purpose of collecting a debt which she owed to his employer, and also to induce her to buy its products, and that the call was made in pursuance of his duties.

The authorities are conflicting in circumstances similar to the instant case as to whether a principal is liable for compensatory damages for a tort committed by an agent. California and Oklahoma seem committed to the rule that the principal is liable for a tort committed by an agent where it is done during the course of his employment, even though the act does not tend to further the principal's interests and is not one which would ordinarily follow from

the duties entrusted to the agent.  See *Andrews* v. *Seidner,* 49 Cal. App. 2d 427, 121 P. 2d 863; *Johnson* v. *Monson,* 183 Cal. 149, 190 P. 635; *Hunt-Murray Co.* v. *Gibson,* 157 Okl. 112, 11 P. 2d 123; *Stansell et al.* v. *Safeway Stores, Inc.,* 44 Cal. App. 2d 822, 113 P. 2d 264.

We believe the better rule to be that a principal is not liable for the willful tort of an agent which is committed during the course of his employment unless ■ it is committed in the furtherance of his employer's interests or unless the employment is such that the use of force could be contemplated in its accomplishment.

The case of *Moskins Stores, Inc.,* v. *DeHart,* 217 Ind. 622, 29 N. E. 2d 948, 949, is a well reasoned case discussing the above principles.  The facts in that case are somewhat similar to the facts in the instant case.  A collector for the defendant company became annoyed at the failure of a customer to pay an account and an altercation ensued.  The court in analyzing the facts discussed the rules stated in Mechem on Agency, 2d Ed., Vol. 2, § 1978, pp. 1540-43, and the American Law Institute's Restatement of the Law of Agency, Vol. 1, § 245, pp. 547, 548, and said:

"It would seem that the rule laid down by Mechem and in the Restatement of the Law is based on sound principle; that a master is only liable for the use of force by a servant where the acts to be performed by the servant are of such a character that they are not uncommonly accompanied by the use of force, or where there was something in the employment indicating that the use of force was contemplated. It would seem, as indicated in the Restatement of the Law, that the collection of accounts does not ordinarily come within this class; and * * * something more than mere employment to collect accounts must be shown. * * *"

In the instant case it is true Davis's duties entailed selling and delivering as well as collecting, but there is nothing inherent in any of these duties which contemplate the use of force in its accomplishment.  Neither can it be said that he furthered his employer's interests by the use of force. In doing so he not only failed in his mission to collect the

company's debt, but succeeded instead, as the evidence disclosed, in losing for the company at least one other customer besides respondent.

Davis in committing the battery was venting his ire at an unpleasant situation created by respondent's insistence that she was not favorably impressed with his honesty and probity and demanding a receipt before she would make any further payments. Davis could have accomplished the object of his employment by giving a receipt. In *Keller* v. *Gunn Supply Co.*, 62 Utah 501, 220 P. 1063, 1064, a case in which defendant's chef committed a battery for personal reasons on a patron at its place of business and during the course of his employment, we quoted with approval the following sattement from *Hardeman* v. *Williams,* 150 Ala. 415, 43 So. 726, 10 L. R. A., N. S., 653:

"The act (of the servant) must be, not only within the scope of his employment, but also committed in the accomplishment of objects within the line of his duties, or in and about the business or duties assigned to him by his employer."

See, also, *Kastrup* v. *Yellow Cab Co.*, 129 Kan. 398, 282 P. 742; *Matsuda* v. *Hammond,* 77 Wash. 120, 137 P. 328, 51 L. R. A., N. S., 920; *Zucker* v. *Lannin Realty Co.*, 217 App. Div. 487, 217 N. Y. S. 65; *Moore* v. *Ford Motor Co.*, 265 Ky. 575, 97 S. W. 2d 400; and *Plotkin* v. *Northland Transp. Co.*, 204 Minn. 422, 283 N. W. 758.

We hold, therefore, that under the facts of this case the appellant Jewel Tea Co., Inc., is not liable for compensatory damages for the battery committed upon ■ respondent by its agent. It follows therefore that it is also not liable for punitive damages.

Judgment as to appellant Jewel Tea Co., Inc., is hereby reversed. Its costs to appellant.

LARSON, McDONOUGH, and MOFFAT, JJ., concur.

WOLFE, Chief Justice (concurring specially).

The core of the opinion lies in the paragraph reading

"We believe the better rule to be that a principal is not liable for the willful tort of an agent which is committed during the *course of*

*his employment* unless it is committed in the *furtherance of his employer's interests* or unless the employment is such that the use of force could be contemplated in its accomplishment." (Italics added.)

I could better subscribe outrightly to this pronouncement without comment if it were not for the fact that the italicized phrases themselves require definition.

In my dissenting opinion in the case of *Stover Bedding Co.* v. *Industrial Comm.*, 99 Utah 423, 107 P. 2d 1027, 134 A. L. R. 1006, I called attention to the difficulties encountered by the early courts in fastening upon a sound basis for the application of the doctrine of "let the principal respond" (respondeat superior) when he was not at fault.

Those cases involved negligence rather than willful tort. A willful act in the sense that the act is not only intended but harm is intended to be inflicted by the intended act usually falls in the class of crimes. A battery is a crime. The early judges used all sorts of phrases such as "in the scope of the employment," "in the cause of the employment," "in furtherance of the master's interests or business," "for the benefit of the master," "acting for the master." These various phrases reflected several basic concepts: First, that when the master acts through another it is as if he himself was acting. This concept had the disadvantage of still leaving open the question of when under the facts was the master acting through another. This led to the second concept as the basis for the principle that even though the servant may have been acting without instructions, in fact in some cases contrary to instructions, if he had not disconnected himself from the employment but was still in its course or as some judges put it in its scope the innocent victim should not be required to assume the full consequences of the negligence but the master should at least be required to make restitution insofar as money damages would accomplish that end. The reason given for this anomaly in the law of requiring one not at fault to pay for an injury, was explained on the basis of the third concept: That the act of the servant was in the interest of the master or for his benefit or in the

advancement of his business and for that reason he should respond. Since in many cases, the action of the servant at least the manner in which it was done, was distinctly not in the interest of the master or for the advancement of the business, this finally led to the concept that the basis of the master's liability lay in the fact that he was the actuating or moving cause of the injury because he had set the servant in motion. But here it was recognized that such concept given full range would make the master liable for acts of the servant even in some cases when he had departed from the employment because but for the employment the servant would not have been in position to commit the negligent act. It was at this point that the old tort concepts of "natural, probable and proximate cause" "reasonably to be apprehended" and "independent intervening cause" came to the rescue. The law has refused to accept the "but for" doctrine so ably expounded by Judge Andrews in *Palsgraf* v. *Long Island R. Co.*, 248 N. Y. 339, 162 N. E. 99, 100, 59 A. L. R. 1253. It has accepted the view of Chief Judge Cardozo in the same case to the effect that the consequences of the act must be within the "range of apprehension." See *Barrus* v. *Western Union Telegraph Co.*, 90 Utah 391, 62 P. 2d 113. The net historical result is that where the master's act sends the servant on his way and the servant while on that way does an act which negligently injures another the master must respond if it was reasonably to be apprehended that the servant might so act. It should be noted that in this case it is the act of the servant and not the consequences of his act which must be within the range of apprehensibility before they can be the act of the master. Once being the act of the master the usual tort rule that the consequences must be within the range of apprehensibility also applies. *Barrus* v. *Western Union Telegraph Company*, supra.

Applying these principles to the above case the question arises: Could the Jewel Tea Company when it sent Davis on his course as collector reasonably apprehend that he

would in the act of attempting to collect money due it, use force? In those cases where seizure of property or eviction of persons is contemplated, the use of force may be expected and reasonably apprehended; but not so in the business of soliciting orders or collecting bills.

But by inference says the quotation taken from the main opinion: A master is liable in cases where the agent commits a *willful* tort while in the course of his employment if it is done in the furtherance of his master's interests. How does this fit in with the concepts above enunciated? Certainly if the agent has departed from the employment or from its course or scope such act breaks the chain of causation between the act of the master, in sending him on his way, and the tort. Such departure is equivalent to an independent intervening cause. Such was the case in *Rohrmoser* v. *Household Finance Corporation*, 231 Mo. App. 1188, 86 S. W. 2d 103, where the collector departed on his own course. in attempting to become unduly familiar with the plaintiff. Such, too, would be the case where the assault grows out of. an altercation which had its genesis in purely personal differences—thus where a quarrel ensues because either the collector or the customer may use the occasion of the collector's visit to warn the other against permitting his child to . trespass or against becoming unduly familiar with a member of his family or other personal grievance. Where during employment or while engaged in a transaction called for by the employment a quarrel ensues over a purely personal matter. the employment would be only the occasion for it. It would . not be within the scope or the course of the employment. The difficult case is that in which angry words which lead to an assault arise because of the attempt to sell or collect. Certainly the assault can then be said to grow out or stem from the employment. And in a compensation case it would be considered as arising out of the employment if not in the course of it. Where the act done in line of duty and the assault which arose out of it are part of one closely integrated transaction, I am not sure that it can be said that there was.

a departure from the course or scope of the employment. Otherwise, I would see no purpose in introducing the element that the willful tort must be in furtherance of the master's interests. The departure itself would break the chain of causation.

In the instant case the battery committed by Davis was not so closely integrated with the act of attempting to collect as seems to have been the situation in the cases of *Matsuda* v. *Hammond*, 77 Wash, 120, 137 P. 328, 51 L. R. A., N. S., 920, or *Anderson* v. *Metropolitan Life Insurance Co.*, 128 Misc. 144, 218 N. Y. S. 494; *Kastrup* v. *Yellow Cab Company*, 129 Kan. 398, 282 P. 742. In the instant case force was not directed or designed to accomplish a particular act for the employer but rather to vent his feelings after he had been told by Mrs. Barney that she would have no more to do with him or the Jewel Tea Company if he represented it and after she ordered him off the premises. Assuming, however, that Davis had not by the assault put himself out of the scope or course of his employment how stands the case in reference to the second necessary element laid down by the decision, to wit that the force must be used in furtherance of the master's interests or business? Must the furtherance of the master's interests encompass an actual benefit to the master or is it in furtherance of his interest if at the time it was done it seemed reasonably calculated to advance them. The phrase "in furtherance of the employer's interest" may have a slightly narrower signification than the phrase "in furtherance of the employer's business." Be that as it may it cannot be said that force which is likely to bring on a lawsuit and result in a judgment for damages against the master is in furtherance of his interests or his business. The distinction then comes in the use of force which at the time it was applied was for the purpose of accomplishing an act in line of the servant's duty and the use of force which is produced by anger without thought or purpose of furthering any interest other than to vent that anger on the person whose "fighting words" pro-

duced it. The case of *Crelly* v. *Missouri & Kan. Telephone Co.*, 84 Kan. 19, 113 P. 386, 33 L. R. A., N. S., 328, cited by appellant may be one where force was used on the employee not as a mere product of the heat of passion but to compel her to sign the voucher. I am not sure that under the principle laid down in the main opinion that case would not go the other way. But under the evidence in this case it is clear that the force used by Davis was not designed to produce payment or for the "accomplishment of objects within the line of his duties, or in and about the business or duties as signed to him by his employer" which trenchant quoted phrase was borrowed by this court from the case of *Hardeman* v. *Williams*, 150 Ala. 415, 43 So. 726, 728, 10 L. R. A., N. S., 653, and used in our decision in the case of *Keller* v. *Gunn Supply Co.*, 62 Utah 501, 220 P. 1063.

If, then, we accept the thesis which seems the best justification for the doctrine of respondeat superior i. e. master as cause for the injury in that he started the servant on his course, in cases of willful tort or the willful invasion of plaintiff's person by force, the master cannot be held to be the cause where there is a departure from the employment or, if no departure, the agent is not acting for what he conceives to be for the master's interests but for the purpose of venting his spleen on the plaintiff even though the spleen arose from transactions which were in the course of the employment. Whether we think of force used for personal purposes as not being within the realm of apprehensibility or because it itself breaks the chain of causation leading back to the master makes no difference. The result is the same. Under the facts of this case Davis in his use of force was not acting to advance the interests of his master nor to accomplish objects within the line of his duties and the action of the appellant in sending him on his course was not in any sense a legal cause of the assault. I, therefore, concur.