**2023 UT 14**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

JULIE BURTON,
*Appellant*,

*v.*

MICHAEL CHEN, D.O., and ALTA PAIN PHYSICIANS, LLC,
*Appellees*.

No. 20210873
Heard January 9, 2023
Filed July 29, 2023

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Amber M. Mettler
No. 190904887

Attorneys:[1]

Joseph M. Chambers, Josh Chambers, J. Brett Chambers, Logan,
for appellant

Troy L. Booher, Beth E. Kennedy, Taylor P. Webb, David C.
Epperson, Scott H. Epperson, Salt Lake City, for appellees

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1 Julie Burton was a patient at Alta Pain Physicians (Alta Pain). Burton filed an action against the clinic and Oscar Johnson, an Alta Pain physician assistant. She also named Dr. Michael Chen—

---

[1] Amicus Curiae: Charles T. Conrad, Tanner J. Bean, Jessica A. Andrew, Salt Lake City, for Utah Association for Justice.

Johnson's supervising physician—in the suit. Burton alleged that Johnson subjected her to sexual harassment and abuse when she saw him for pain treatment at Alta Pain.

¶2 Burton settled her claims against Johnson. Chen and Alta Pain moved for summary judgment on Burton's claims of sexual assault, sexual battery, and intentional infliction of emotional distress—all of which seek to hold Chen and Alta Pain responsible for Burton's abuse under principles of *respondeat superior*. The district court granted the motion.

¶3 Burton seeks interlocutory review of that decision. Burton argues that the district court erroneously applied the law to conclude that Chen and Alta Pain are not vicariously liable for Johnson's actions. Burton also contends that if the district court did not misapply the law, the law needs to change, and she urges us to abandon our jurisprudence and adopt a foreseeability test for employer liability.

¶4 The district court did not err when it entered summary judgment on the *respondeat superior*-based claims. We take Burton's point that a foreseeability test might make it easier for plaintiffs to recover against those who employ abusive employees. But Burton has not met her burden of convincing us that we should depart from *stare decisis* principles and significantly alter the legal landscape in this area of the law. We affirm.

## BACKGROUND

¶5 Alta Pain hired Oscar Johnson as a physician assistant. Dr. Michael Chen served as Johnson's supervising physician.[2] At that time, Utah law required physician assistants to operate under a "delegation of services agreement." *See* UTAH CODE § 58-70a-501(1)(c) (2017). The record before us contains no such agreement.

¶6 Alta Pain terminated its relationship with Johnson after one of his patients complained that Johnson had made inappropriate sexual contact with her during an appointment. Chen and Alta Pain investigated Johnson's conduct and heard from several other

---

[2] This case is before us on interlocutory review of a grant of summary judgment. "When reviewing a . . . motion for summary judgment, we recite the facts in the light most favorable to the non-moving party." *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 2, 128 P.3d 1151.

patients about similar abuse they alleged Johnson had inflicted on them.

¶7 Julie Burton was one of the patients who reported abuse during Chen and Alta Pain's investigation. Burton was a chronic-pain patient who attended monthly appointments for several years. Burton described in her deposition how Johnson touched her sexually without permission and threatened to withhold medication if she did not perform sexual acts with him. Burton also testified that Johnson threatened to kill people she loved.

¶8 Burton sued Johnson, Alta Pain, and Chen. Burton asserted claims of medical malpractice, sexual assault, sexual battery, intentional infliction of emotional distress, and negligent infliction of emotional distress against Johnson. Burton and Johnson reached a settlement agreement. Burton dismissed her claims against Johnson.

¶9 Burton alleged two types of claims against Chen and Alta Pain. The first category of claims asserted direct liability against the doctor and clinic for negligence and the negligent employment of Johnson. Those claims remain live in the district court and are not the subject of this interlocutory appeal.

¶10 The second category of claims asserted that Chen and Alta Pain were responsible for Johnson's tortious conduct under *respondeat superior* principles. These causes of action included sexual assault, sexual battery, and intentional infliction of emotional distress. Chen and Alta Pain moved for summary judgment on these claims. The district court granted the motion. Burton sought interlocutory review of the grant of summary judgment.

### ISSUES AND STANDARD OF REVIEW

¶11 Burton argues that we should reverse the district court for three reasons. Burton first argues that the district court erred when it concluded that Chen and Alta Pain could not be held vicariously liable for Johnson's conduct. We review a grant of summary judgment "for correctness, granting no deference to the trial court's conclusions, and we view the facts and all reasonable inferences in the light most favorable to the nonmoving party. Summary judgment is appropriate if reasonable jurors, properly instructed, would be able to come to only one conclusion." *UMIA Ins. v. Saltz*, 2022 UT 21, ¶ 65, 515 P.3d 406 (cleaned up).

¶12 Burton next asserts that the version of the Utah Physician Assistant Act (the Act) in effect when Alta Pain and Chen hired Johnson imposed liability on a supervising physician for all actions

within the scope of the delegation of services agreement. *See* UTAH CODE § 58-70a-102(2) (2017). Because Chen and Alta Pain did not produce a delegation of services agreement it had with Johnson, Burton argues that they are liable for all of Johnson's actions. Burton maintains that the district court erred when it misinterpreted the Act and reached a contrary result. We review the district court's interpretation of a statute for correctness. *State v. Mooers*, 2017 UT 36, ¶ 5, 424 P.3d 1.

¶13   Burton last argues that we should abandon our precedent and adopt a foreseeability approach to determine when a principal should be liable for the conduct of an agent. Burton asked the district court to do the same, but the district court concluded that it could not overturn binding precedent. The question of whether Burton has met her burden to convince us to overturn precedent is one we decide in the first instance.

**ANALYSIS**

### I. THE DISTRICT COURT DID NOT ERR WHEN IT GRANTED SUMMARY JUDGMENT ON BURTON'S *RESPONDEAT SUPERIOR* CLAIMS

¶14 To hold Chen and Alta Pain liable for Johnson's actions under *respondeat superior*, Burton would need to demonstrate that Johnson's conduct was the general kind he was hired to perform and that Johnson was motivated, at least in part, to serve Chen and Alta Pain's interests. *See M.J. v. Wisan*, 2016 UT 13, ¶ 54, 371 P.3d 21. The district court concluded that Johnson's sexual misconduct was "indisputably not the general kind of conduct Johnson was hired to perform" and not "closely connected" with his job duties. The court also determined that there was "no indication" that Johnson was in any way trying to further his employer's interests through his actions. It therefore concluded that Burton's *respondeat superior*-based claims could not survive summary judgment. Burton argues that this was error.

¶15 *Respondeat superior* is a common law agency doctrine, under which an employer can be held vicariously liable for the torts of her employees. *Id.* ¶ 50. We recognize that an employer should be liable for an employee's actions that occur "within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." *Id.,* ¶ 52 (quoting Restatement (Third) of Agency § 7.07(2) (Am. L. Inst. 2006)). We also recognize that an employer should not be liable

for an employee's actions that occur within "'an independent course of conduct' not connected to the principal." *Id.* (quoting Restatement (Third) of Agency § 7.07(2) (Am. L. Inst. 2006)). The complication arises when we try to precisely define the line that separates a course of conduct subject to the employer's control from the employee's independent conduct.

¶16  *M.J. v. Wisan* provides our most recent attempt to define that boundary. There, we described the inquiry as: (1) "whether the agent's conduct is of the general kind the agent is employed to perform"; and (2) "whether the agent's acts were motivated, at least in part, by the purpose of serving the principal's interest." *Id.* ¶ 54 (cleaned up).[3] Because Burton's claim fails the first part of the test, the grant of summary judgment was proper.[4]

¶17 The district court held that Johnson's assaults were "indisputably not the general kind of conduct Johnson was hired to perform," nor were they "closely connected" with his job duties. Burton contends that the district court erred because Johnson's acts were of the "general kind" he was hired to perform. She uses our holding in *Wisan*, paired with cases from other states, to argue that "a reasonable jury would find that Johnson's conduct was [']generally directed toward the accomplishment['] of his employer's objective to provide pain relief." (Quoting *Birkner v. Salt Lake County*, 771 P.2d 1053, 1057 (Utah 1989).)

---

[3] The *Wisan* test modified the test articulated in *Birkner v. Salt Lake County*, 771 P.2d 1053 (Utah 1989). *Wisan*, 2016 UT 13, ¶ 59. In *Birkner*, we held that an employee's conduct was only within the scope of employment if it was "of the general kind" the employee was hired to perform, the conduct occurred within the hourly and spatial boundaries of employment, and the employee was acting to serve the employer's interests. *Birkner*, 771 P.2d at 1056–57. *Wisan* eliminated *Birkner*'s requirement that a plaintiff establish that the employee's conduct occurred "within the hours of the employee's work and the ordinary spatial boundaries of the employment." *Wisan*, 2016 UT 13, ¶ 59 (quoting *Birkner*, 771 P.2d at 1057).

[4] Because the district court correctly determined that no reasonable juror could conclude that Johnson's conduct was of the general kind he was employed to perform, we do not analyze the second part of the *Wisan* test.

¶18 To start, *Wisan* does not provide an apt comparison. In *Wisan*, the agent, Warren Jeffs, was a trustee of a trust created to benefit the Fundamentalist Church of Jesus Christ of Latter-Day Saints. *Wisan*, 2016 UT 13, ¶¶ 3–6. We noted that "[f]rom 1998 to 2006 the Trust was operated for the express purpose of furthering the doctrines of the FLDS Church, including the practice of plural marriage involving underage girls." *Id.* ¶ 6.

¶19 This led us to conclude that as "trustee of the Trust . . . , Jeffs was called upon to administer the Trust in accordance with the doctrines and principles of the FLDS Church . . . .[,] includ[ing] the arrangement of plural, underage marriages." *Id.* ¶ 65. We held that there was "a basis in the record for the conclusion that Jeffs's . . . . conduct was 'of the general kind' he was expected 'to perform' as trustee." *Id.*

¶20 We further explained,

> [g]iven Jeffs's unique role as leader of the FLDS Church, and in light of the unusual, troubling function of plural marriage involving young brides in the FLDS culture, . . . a reasonable factfinder could conclude that Jeffs was acting within the scope of his role as a trustee in directing [an adult FLDS member] to engage in sexual activity with [a minor].

*Id.* ¶ 62.

¶21 The case before us lacks the unique factual setting that allowed us to conclude that a jury could find that Jeffs's sexual misconduct was the general kind of act he was employed to perform. To the contrary, Johnson conceded that he was "hired . . . with the expectation that [he] would not engage in any improprieties with [patients]" and that the physician assistant code of ethics prohibits sexual relationships with patients.

¶22 Moreover, Johnson had entered into a stipulation with the Division of Occupational and Professional Licensing concerning a possible reinstatement of his suspended license. In that stipulation, Johnson admitted that he engaged in "inappropriate sexual behavior" with "several" patients and that this behavior constituted "unprofessional conduct."

¶23 Burton argues that she identified evidence that would have permitted a reasonable juror to conclude that Johnson's assaults were generally directed toward the pain relief he was hired to perform. Burton notes that Johnson's misconduct occurred during

work hours and that he reportedly told her and at least one other patient he could make their pain "go away." She argues that, with this evidence, a reasonable jury could find that Johnson was performing the work he was hired to do when he assaulted her. She further contends that, if the facts are viewed in the light most favorable to her as the nonmoving party to a summary judgment motion, a jury could conclude that Johnson was performing the work he was hired to perform.

¶24 We reached a contrary conclusion and affirmed the grant of summary judgment in a similar case. In *J.H. ex rel. D.H. v. West Valley City*, a police officer molested a child participating in a public outreach program. 840 P.2d 115, 118–19 (Utah 1992). There, the officer abused the child, telling him that he was teaching relaxation techniques used by law enforcement. *Id.*

¶25 We said:

> [The officer] was not hired or authorized to instruct [program participants] in sexual matters, nor was he authorized to touch the [program participants] in any manner. . . . [R]easonable minds could not differ in determining that the touching or molestation was not within the general nature of work [the officer] was hired to perform.

*Id.* at 123.

¶26 We reached this conclusion even though the abuse occurred in a police cruiser, after a police-sanctioned activity, and the officer told his victim the abuse was a sanctioned police relaxation technique. *See id.* at 119. We concluded that "obviously" the abuse the officer committed was not the general kind of act he was hired to perform and that a reasonable juror could not decide otherwise. *Id.* at 123.

¶27 Burton does not address *J.H.* She instead uses three out-of-state cases, *Fearing v. Bucher*, *Lourim v. Swensen*, and *Plummer v. Center Psychiatrists*, to argue that courts should find that tortious acts arising out of acts authorized by the employer should be considered of the "general kind" of acts an employee is hired to perform.

¶28 In *Fearing*, the Oregon Supreme Court reversed a court of appeals decision upholding a grant of a motion to dismiss for failure to state a claim against the employer in a case of sexual molestation by a priest. *Fearing v. Bucher*, 977 P.2d 1163, 1164–65 (Or. 1999). The Oregon court reasoned that, viewing the facts of the complaint in

favor of the nonmoving party on a motion to dismiss, the molestation could be seen as arising out of pastoral conduct. *Id.* at 1166–68.

¶29 In *Lourim*, the Oregon Supreme Court reinstated a *respondeat superior* claim against Boy Scouts of America that had been dismissed at the pleading stage. *Lourim v. Swensen*, 977 P.2d 1157, (Or. 1999). The Oregon Supreme Court employed the same reasoning it had in *Fearing. Id.* at 1160–62.

¶30 In *Plummer*, the Virginia Supreme Court reversed a grant of demurrer on *respondeat superior* claims against a psychologist's employer. *Plummer v. Ctr. Psychiatrists, Ltd.*, 476 S.E.2d 172, 173 (Va. 1996). The Virginia court noted the psychologist-patient relationship and reasoned that "there simply [were] not sufficient facts which would permit [the court] to hold, as a matter of law, that the defendant ha[d] met its burden of showing that its employee was *not* acting within the scope of his employment." *Id.* at 175.

¶31 Needless to say, none of these out-of-jurisdiction cases is binding on our analysis. And because they were all decided at the initial pleading stage, none of them is particularly helpful. *J.H.*, on the other hand, is both binding and helpful. We see nothing that would distinguish the grant of summary judgment in this case from the grant of summary judgment we upheld in *J.H.*

¶32 We agree with the district court that, on this record, no reasonable juror could find that Johnson's acts were the general sort of acts he was hired to perform. The district court did not err by granting summary judgment for Chen and Alta Pain on Burton's *respondeat superior* claims.

## II. THE UTAH PHYSICIAN ASSISTANT ACT DOES NOT MAKE CHEN AND ALTA PAIN LIABLE FOR JOHNSON'S INTENTIONAL TORTS

¶33 Burton next contends that the district court erred when it rejected an alternative theory of liability. Burton argued to the district court that the Act makes Chen and Alta Pain liable for Johnson's actions.

¶34 Burton's argument relies on a requirement found in the version of the Act in place at the time of the assaults. That iteration of the Act required that every physician assistant operate under a "delegation of services agreement." *See* UTAH CODE § 58-70a-501(1)(c) (2017). The Act defined a "delegation of services agreement" as "written criteria jointly developed by a physician

assistant's supervising physician and any substitute supervising physicians and the physician assistant, that permits a physician assistant, working under the direction or review of the supervising physician, to assist in the management of common illnesses and injuries." *Id.* § 58-70a-102(2)(a).

¶35 Burton notes that the Act defined a "supervising physician" as a person who "acts as the primary supervisor of a physician assistant and takes responsibility for the professional practice and conduct of a physician assistant in accordance with [the Act]." *Id.* § 58-70a-102(6)(b).

¶36 Burton combines these two provisions to envision a regime where the supervising physician is liable for any of the actions that are within the scope of service described in the delegation of services agreement. More specifically, Burton contends that the Act's phrase "takes responsibility for the professional practice" means that supervising physicians are responsible for any actions taken by their physician assistants under the delegation of services agreement. *See id.*

¶37 Burton takes this principle and argues that since Chen and Alta Pain did not produce a delegation of services agreement during litigation, a jury would be free to assume that Chen and Alta Pain put no limitations on the scope of the services they delegated to Johnson. Burton argues that this means that Chen and Alta Pain have, in the Act's language, "take[n] responsibility" for anything Johnson did and are therefore legally liable for any action Johnson took. *See id.* In other words, Burton argues that without a delegation of services agreement, the scope of Johnson's employment was boundless, and any action he took was in the scope of his employment.

¶38 Leaving aside the question of whether the failure to produce a delegation of services agreement would permit the jury to draw the inference Burton claims, we do not interpret the Act the way Burton does. To be clear, we understand the statutory interpretation argument Burton makes. Burton claims that the Legislature intended that the Act make physicians liable—without regard for common law *respondeat superior* principles—for actions taken by their physician assistants within the scope of their delegation of services agreement. And we understand how Burton could read the statute to reach that result. We can even acknowledge that the Utah Legislature might very well have intended the Act to work the way Burton describes.

¶39 Although we can see Burton's reading, we reject it because the interpretation Burton offers would have worked a major revision to common law *respondeat superior* principles. That is, Burton reads the Act to have imposed liability on the principal for the actions of the agent even if the plaintiff could not establish that the actions met the common law test to assess whether they occurred within the scope of employment. While it would be well within the Legislature's power to enact such a change, there are good reasons to conclude that it did not.

¶40 The major problem Burton faces is that we do not presume that a statute was intended to abrogate common law principles unless the Legislature makes that intent clear. *See, e.g.*, *Jedrziewski v. Smith*, 2005 UT 85, ¶ 14, 128 P.3d 1146 ("[T]he courts look at legislative intent to determine whether the act preempts existing common law."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 318 (2012) ("[S]tatutes will not be interpreted as changing the common law unless they effect the change with clarity.").[5]

¶41 Moreover, while we have noted the dubious value of legislative history, and especially the absence of legislative history, we think it somewhat suspicious that the Legislature would work such a major change to agency law without mentioning it anywhere. This is especially true where the Legislature removed the "take responsibility" language from the Act a few years after the statute's enactment. And when it did that, it did not assert that it was abandoning statutory liability and returning to common law *respondeat superior* principles.

---

[5] A related interpretive principle is that the Legislature does not normally "hide elephants in mouseholes." *Rutherford v. Talisker Canyons Fin., Co.*, 2019 UT 27, ¶ 53, 445 P.3d 474. That is to say that we don't normally expect major changes to the established legal landscape to be accomplished by the insertion of an ambiguous phrase like "take responsibility." That does not mean that it cannot happen, but we usually presume that if the Legislature intended a major change to common law, it will either tell us or give us other textual clues about its intent. Here, we have neither textual clues nor anything else to suggest that the Legislature intended the Act's delegation of services provisions to replace *respondeat superior* principles.

¶42  When we are asked to decide how the Legislature intended the Act to work, it is easy to shy away from an interpretation that would have meant a sea change to the state of agent-principal law without acknowledging the change anywhere inside the text, nor giving any other indication that it intended such a result.

¶43  Simply stated, the Act does not make Chen and Alta Pain liable for Johnson's sexual assaults. The district court did not err when it rejected Burton's argument.

### III. BURTON HAS NOT MET THE *ELDRIDGE v. JOHNDROW* BURDEN TO OVERTURN PRECEDENT

¶44  Burton also argues that we should abandon *Birkner* and *Wisan* (and *J.H.*, although she doesn't explicitly ask for that) and adopt a foreseeability test. Burton suggests that under this approach *respondeat superior* liability could be found where the "occurrence was a generally foreseeable consequence of the [employment] activity." (Quoting *Rodgers v. Kemper Constr. Co.*, 124 Cal. Rptr. 143, 148 (Cal. Ct. App. 1975).) Burton argues that under this formulation, sexual impropriety would be a foreseeable consequence of interactions between healthcare providers and patients in pain clinics.

¶45  Burton cites out-of-jurisdiction cases to describe the foreseeability standard she urges us to adopt. For example, she cites *Rodgers v. Kemper Construction Co.* where the California Court of Appeals defined foreseeable for *respondeat superior* purposes as "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* at 149. The *Rodgers* court employed this standard to affirm a jury verdict holding a construction subcontractor liable for an assault committed by its employees on work grounds but after work hours. *Id.* at 149–52.

¶46  Burton also cites *Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd.*, as an example of a foreseeability test. 329 N.W.2d 306 (Minn. 1982). In *Marston*, a jury found the employer not liable for sexual misconduct by an employee psychologist. *Id.* at 307. The Minnesota Supreme Court reversed a denial of judgment notwithstanding the verdict because the conduct occurred at the workplace during work hours and could have been foreseeable. *Id.* at 307, 311. The *Marston* court cited testimony that sexual relations between therapists and patients are a "well-known hazard." *Id.* at 311.

¶47 Burton likewise directs us to *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167 (2d Cir. 1968), a fifty-year-old case from the Second Circuit. In *Bushey*, a drunken sailor caused damage to a dock by accidentally crashing a boat into it. *Id.* at 168. The dock owner sued the sailor's employer, the United States government. *Id.* at 169–70. The *Bushey* court held the government liable for the sailor's actions. *Id.* at 172. The *Bushey* court reasoned that it was foreseeable to the United States that a sailor might find himself less than sober but still attempt to do his job, and that this combination could result in damage. *Id.* at 171–72.

¶48 The only Utah case Burton cites for her proposition that we should adopt foreseeability is *Barney v. Jewel Tea Co.*, 139 P.2d 878 (Utah 1943). In *Barney*, a grocery store employee got physical with a customer while attempting to collect a debt. *Id.* at 878–79. We declared that "a principal is not liable for the willful tort of an agent which is committed during the course of his employment unless it is committed in the furtherance of his employer's interests or unless the employment is such that the use of force could be contemplated in its accomplishment." *Id.* at 879. Burton points to this language to argue that, at least at one point, this court was inclined toward some sort of foreseeability test.

¶49 *Barney* does not help Burton's cause. After we stated the language Burton cites, we articulated our holding: "The act (of the [agent]) must be, not only within the scope of his employment, but also committed in the accomplishment of objects within the line of his duties, or in and about the business or duties assigned to him by his employer." *Id.* at 880 (cleaned up). And we ultimately concluded that the rough business the Jewel Tea Company's debt collector inflicted on Barney was outside the scope of his employment. *Id.* In context, the reference to "contemplated in its accomplishment" was just an old-timey way of asking whether the conduct is "of the general kind the agent is employed to perform." *Compare id.* at 879 *with M.J. v. Wisan*, 2016 UT 13, ¶ 54, 371 P.3d 21 (cleaned up).

¶50 Further, even if *Barney* said what Burton wants it to say, it would not control the outcome of this case. Our more recent pronouncements in *Wisan*, *Birkner*, and *J.H.*, do. To adopt the foreseeability test Burton urges, we would need to overturn those cases.

¶51 We do not overturn our precedent lightly. *Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553. We have described the burden a party must shoulder as a "heavy" one. *See Rutherford v. Talisker Canyons Fin., Co.*, 2019 UT 27, ¶ 3, 445 P.3d 474. Before we

will cast aside our caselaw, a party must address: "(1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Eldridge*, 2015 UT 21, ¶ 22.

¶52 Burton does not meaningfully engage with these factors. Burton makes brief mention of our acknowledgment in *Wisan* that "the law in this area has evolved somewhat in the ensuing years" and that some jurisdictions now reject motive-and-purpose type tests. *Wisan*, 2016 UT 13, ¶¶ 55–57. But that is about all Burton offers to meet her burden.

¶53 Burton also argues that even though the current test is rooted in notions of fairness, the system is unfair to victims of intentional torts who might find it difficult to recover from employers under the current test. This might be true. But Burton offers little more than the bare assertion that this is the case. It is hard for us to assess whether the reasoning underpinning our *respondeat superior* jurisprudence is no longer persuasive without understanding whether the problems Burton offers exist and how pervasive they are.

¶54 Stated differently, our existing jurisprudence strikes a balance between important policy considerations by holding employers liable for the torts of their employees only when they occur in the scope of employment or when a plaintiff can show that the employer negligently hired or supervised the employee. Burton tells us this system does not work but fails to show us why. Without a showing that the balance is off, we cannot conclude that the reasoning underlying our precedent is no longer persuasive.

¶55 Burton offers even less argument on the second *Eldridge* inquiry: how firmly the precedent has become established. This is important because we are wary of disrupting the reliance that our precedents may have created.

¶56 "As we have noted, people should know what their legal rights are as defined by judicial precedent, and having conducted their affairs in reliance on such rights, ought not to have them swept away by judicial fiat." *Cope v. Utah Valley State Coll.*, 2014 UT 53, ¶ 19, 342 P.3d 243 (cleaned up). Burton's reluctance to address how firmly our precedent has taken root is telling because Chen and Alta Pain credibly describe how parties may have "conducted their affairs" in reliance on the existing law.

¶57 Chen and Alta Pain argue that employers have sought and obtained insurance policies that cover claims for negligent hiring and negligent supervision but lack coverage for the vicarious claims that a change in our test would create. Burton disputes the assertion and argues that healthcare insurers can obtain secondary policies for such claims.

¶58 We are not well positioned to rule on the effects of dramatically changing our test based upon unsupported assertions on both sides of the question. Since the burden falls on Burton to convince us that the jurisprudence is not firmly established, we must reject her request to overturn our caselaw.

¶59 We do not mean to imply that Burton's arguments are without merit. Burton raises important policy concerns about how we should balance the ability of victims to recover from those who employ wrongdoers against the costs of imposing liability on employers in the absence of negligent hiring and supervision.

¶60 Reasonable minds can differ on where to best draw that line. *Stare decisis* means that we do not reweigh that balance and redraw the line in every case that comes before us. Rather, *stare decisis* principles counsel that we promote predictability and recognize settled expectations by only overturning our caselaw where a party can meet the *Eldridge* burden. Burton has not done that here.[6]

## CONCLUSION

¶61 The district court correctly held that *respondeat superior* principles do not make Chen and Alta Pain vicariously responsible for Johnson's abuse. The Utah Physician Assistant Act does not change that conclusion. And Burton has not convinced us that we should discard our *respondeat superior* caselaw and establish a foreseeability test. We affirm the grant of summary judgment.

———————————

[6] Burton still has potential recourse against Chen and Alta Pain. Her negligence and negligent supervision claims remain untouched by this decision. Moreover, those who share Burton's concerns about the way our caselaw balances these interests can ask the Utah Legislature to redraw the lines. That branch of government is better positioned to solicit input from all interested parties and make the policy decisions necessary to recalibrate the test in the way Burton advocates.